# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

PEGGY TOKHEIM,

    Plaintiff,

vs.

GEORGIA-PACIFIC GYPSUM L.L.C.,

    Defendant.

No. C07-3057-MWB

**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

_____

## TABLE OF CONTENTS

*I. INTRODUCTION AND BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *A. Procedural Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   *B. Factual Background* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II. LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *A. Summary Judgment Standards* . . . . . . . . . . . . . . . . . . . . . . . . . 4
   *B. Analysis Of Issues* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
      *1. The doctrine of judicial estoppel* . . . . . . . . . . . . . . . . . . . . 9
      *2. Application of the doctrine of judicial estoppel* . . . . . . . . . . 12
         *a. The first New Hampshire factor* . . . . . . . . . . . . . . . . 12
         *b. The second New Hampshire factor* . . . . . . . . . . . . . . 15
         *c. The third New Hampshire factor* . . . . . . . . . . . . . . . 16
         *d. Inadvertence or good faith mistake exception* . . . . . . . . 16

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION AND BACKGROUND

### A. *Procedural Background*

On October 9, 2007, plaintiff Peggy Tokheim filed an amended complaint in this court against her former employer, defendant Georgia-Pacific Gypsum, L.L.C. ("Georgia-Pacific"), alleging the following causes of action: (1) claims of sexual harassment, sex discrimination and retaliation in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. *et seq.*; and (2) a pendent state law claim under the Iowa Civil Rights Act ("ICRA") for sexual harassment, sex discrimination and retaliation, IOWA CODE CH. 216.

Defendant Georgia-Pacific has filed a Motion for Summary Judgment. In its motion, defendant Georgia-Pacific asserts that it is entitled to summary judgment on the grounds that plaintiff Tokheim's claims are barred under the doctrine of judicial estoppel. Specifically, defendant Georgia-Pacific contends that plaintiff Tokheim failed to disclose her claims against it to the United States Bankruptcy Court for the Northern District of Iowa at any time during the pendency of her prior Chapter 13 bankruptcy proceeding in that court even though she was under an affirmative duty to do so. Plaintiff Tokheim has filed a timely resistance to defendant Georgia-Pacific's Motion for Summary Judgment, arguing that defendant Georgia-Pacific cannot establish the three requisite factors for application of judicial estoppel against her. Alternatively, plaintiff Tokheim contends that her failure to disclose her claims in bankruptcy were the result of a good faith mistake, and therefore, the doctrine of judicial estoppel is inapplicable. Defendant Georgia-Pacific has filed a timely reply brief.

### B. *Factual Background*

The summary judgment record reveals that the following facts are undisputed.

On October 1, 2001, plaintiff Peggy Tokheim filed a voluntary petition for Chapter 13 bankruptcy with the United States Bankruptcy Court for the Northern District of Iowa. Plaintiff Tokheim filed her bankruptcy petition under "penalty of perjury." Plaintiff Tokheim was represented by counsel in her bankruptcy case. The attached schedules filed by plaintiff Tokheim required her to list "all contingent and unliquidated claims of every nature" and "all suits or administrative actions" to which plaintiff Tokheim is or was a party within one year of filing for bankruptcy. Plaintiff Tokheim did not disclose any contingent or undisputed claims, and, with respect to "suits or administrative actions," listed only a foreclosure action and a collection proceeding.

On January 15, 2002, the bankruptcy court entered an order confirming plaintiff Tokheim's Chapter 13 bankruptcy plan, which provided for repayment to creditors over a period of sixty months. Based on plaintiff Tokheim's representation of her financial affairs, the confirmed plan provided for an estimated payment of at least $5733.82 to her unsecured creditors, which represented 5.45 percent of the amount, $105,115.59, owed to them.

On July 25, 2002, plaintiff Tokheim started working for defendant Georgia-Pacific. This was almost ten months after she filed for bankruptcy. The bankruptcy court entered its order confirming plaintiff Tokheim's Chapter 13 bankruptcy plan seven months prior to her being employed by Georgia-Pacific.

Plaintiff Tokheim alleges that she was subjected to sexual harassment and discrimination throughout her period of employment with Georgia-Pacific. She also alleges that she was afraid to report the sexual harassment and discrimination for fear of losing her job. However, on August 4, 2006, plaintiff Tokheim filed a complaint of sexual discrimination, sexual harassment and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the Iowa Civil Rights Commission ("ICRC"). Plaintiff

3

Tokheim alleges that her employment with Georgia-Pacific was wrongfully terminated on August 9, 2006. On August 30, 2006, plaintiff Tokheim filed an amended complaint to reflect her termination. Plaintiff Tokheim was represented by counsel at the time she filed her civil rights complaint and amended complaint.

On at least two occasions, plaintiff Tokheim discussed with her bankruptcy attorney the fact that she had filed civil rights complaints. Her attorney did not advise her to amend her bankruptcy schedules to include the civil rights complaints against Georgia-Pacific. Plaintiff Tokheim did not understand that filing a civil rights complaint may be considered an asset under bankruptcy law. She relied on the advice of her bankruptcy counsel regarding issues of her bankruptcy.

Plaintiff Tokheim never amended her bankruptcy schedules to disclose either her potential claims against Georgia-Pacific or her actual participation in the administrative actions she filed against Georgia-Pacific with the EEOC and ICRC. On December 1, 2006, approximately four months after plaintiff Tokheim filed her complaints with the EEOC and ICRC, the bankruptcy court entered an order discharging plaintiff Tokheim's debts and closing her bankruptcy proceeding. Plaintiff Tokheim's unsecured creditors received $4,675.65. She was represented by counsel at all times during her bankruptcy. On August 15, 2007, plaintiff Tokheim commenced this lawsuit. Plaintiff Tokheim is currently looking for another attorney to reopen her bankruptcy because her bankruptcy counsel failed to file documents which would dispose of liens on her house.

## II. LEGAL ANALYSIS
### A. *Summary Judgment Standards*

Motions for summary judgment essentially "define disputed facts and issues and . . . dispose of unmeritorious claims [or defenses]." *Bell Atlantic Corp. v. Twombly*, 127

S. Ct. 1955, 1982 (2007); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. . . ."). Any party may move for summary judgment regarding "all or any part" of the claims asserted in a case. FED R. CIV. P. 56(a), (b) (allowing a claimant to move for summary judgment "at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party," and allowing a defending party to move for summary judgment "at any time"). Summary judgment is only appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no *genuine* issue of *material* fact and that the moving party is entitled to a judgment as a matter of law." *Id*. 56(c) (emphasis added); *see Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) ("Summary judgment is appropriate if viewing the record in the light most favorable to the nonmoving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.").

A fact is *material* when it "'might affect the outcome of the suit under the governing law.'" *Johnson v. Crooks*, 326 F.3d 995, 1005 (8th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Thus, "the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id*. An issue of material fact is *genuine* if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question," *Woods*, 409 F.3d at 990 (quoting *Anderson*, 477 U.S. at 248); *see Diesel Machinery, Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d

820, 832 (8th Cir. 2005) (stating genuineness depends on "whether a reasonable jury could return a verdict for the non-moving party based on the evidence"). Evidence presented by the nonmoving party that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, such as a "scintilla of evidence," *Anderson*, 477 U.S. at 252; *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir. 1997), or evidence that is "merely colorable" or "not significantly probative," *Anderson* at 249-50, does not make an issue of material fact genuine.

Thus, a *genuine issue of material fact* is not the "mere existence of some alleged factual dispute between the parties." *State Auto. Ins. Co. v. Lawrence*, 358 F.3d 982, 985 (8th Cir. 2004). "'Instead, "the dispute must be outcome determinative under prevailing law."'" *Mosley v. City of Northwoods*, 415 F.3d 908, 910-11 (8th Cir. 2005) (quoting *Get Away Club, Inc. v. Coleman*, 969 F.2d 664, 666 (8th Cir. 1992), in turn quoting *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989)). In other words, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248-49. Essentially, a genuine issue of material fact determination, and thus the availability of summary judgment, is a determination of "whether a proper jury question [is] presented." *Id.* at 249. A proper jury question is present if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

Procedurally, the moving party does not have to "support its motion with affidavits or other similar materials *negating* the opponent's claim," *Celotex*, 477 U.S. at 323, but the moving party does bear "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Thus, a

6

movant need only demonstrate the absence of a genuine issue of material fact and that it is entitled to judgment according to law. *See Celotex*, 477 U.S. at 323 ("[T]he motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."). Once the moving party has successfully carried its burden under Rule 56(c), the nonmoving party has an affirmative burden to go beyond the pleadings and by depositions, affidavits, or otherwise, designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Mosley*, 415 F.3d at 910 ("The nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.'" (quoting *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995))). Thus, the movant must show the absence of a genuine issue of material fact as it relates to the substantive law, and the nonmovant must show the alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 322; *In re Temporomandibular Joint*, 113 F.3d at 1492.

In considering whether a genuine issue of material fact is present the court must view all the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587-88; *Mosley*, 415 F.3d at 910. Further, the court must give such party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita*, 475 U.S. at 587-88. However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Rather than "attempt[ing] to determine the truth of the matter . . . the court's function is

7

to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co., Inc.*, 90 F.3d 1372, 1376-77 (8th Cir. 1996).

Of course, the facts are not the sole concern of the court; after all, a genuine issue of material fact necessarily depends on the substantive law. *See Holloway*, 884 F.2d at 366 ("The presence of a genuine issue of fact is predicated on the existence of a legal theory which can be considered viable under the nonmoving party's version of the facts. The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law."). Thus, the relevant law concerning plaintiff's claims is pivotal. *Anderson*, 477 U.S. at 252 ("[T]he inquiry involved in a ruling on a motion for summary judgment . . . necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."); *see Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998) ("'In ruling on a motion for summary judgment, the court must bear in mind the actual quantum and quality of proof necessary to support liability under the applicable law.'" (quoting *Hartnagel*, 953 F.2d at 396)). Even if no genuine issue of material fact is present, summary judgment is not appropriate unless the governing law supports the moving party's position. FED. R. CIV. P. 56(c) (requiring the moving party to show that it "is entitled to judgment as a matter of law"). Moreover, summary judgment is particularly appropriate "where the unresolved issues are primarily legal rather than factual." *Aucutt v. Six Flags Over Mid-America, Inc.*, 85 F.3d 1311, 1315 (8th Cir. 1996).

With these standards in mind, the court turns to consideration of defendant Georgia-Pacific's Motion For Summary Judgment.

## B. Analysis Of Issues

### 1. The doctrine of judicial estoppel

Defendant Georgia-Pacific asserts that plaintiff Tokheim's claims in this case should be barred on judicial estoppel grounds, contending that the doctrine should be applied to her because she took inconsistent positions in this court and the bankruptcy court as to the existence of employment discrimination claims against it. As the Eighth Circuit Court of Appeals has explained, judicial estoppel "'prohibits a party from taking inconsistent positions in the same or related litigation.'" *United States v. Grap,* 368 F.3d 824, 830-31 (8th Cir. 2004) (quoting *Hossaini v. Western Mo. Med. Ctr.,* 140 F.3d 1140, 1142 (8th Cir. 1998)). "'[J]udicial estoppel is an equitable doctrine invoked by a court at its discretion.'" *Id.* (quoting *New Hampshire v. Maine,* 532 U.S. 742, 750 (2001), with internal quotation marks omitted). In the bankruptcy context, the Eighth Circuit Court of Appeals has noted that:

> a party may be judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements. *Coastal,* 179 F.3d at 208. A debtor's failure to list a claim in the "mandatory bankruptcy filings is tantamount to a representation that no such claim existed." *In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir. 2004).

*Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1047 (8th Cir. 2006)

The purpose of the doctrine is "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire,* 532 U.S. at 749-50 (internal citations and quotations omitted); *see Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1047 (8th Cir. 2006) (recognizing that the purpose of the doctrine of judicial estoppel is to "protect[] the integrity of the judicial process.") (citing *Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 738 n.6 (8th Cir. 1987));

*Leonard v. Southwestern Bell Corp. Disability Income Plan*, 341 F.3d 696, 702 (8th Cir. 2003); *Bendet v. Sandoz Pharm. Corp.,* 308 F.3d 907, 910 (8th Cir. 2002) (citing *New Hampshire,* 532 U.S. at 749-50); *see also In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir. 2004) ( "'The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest."') *In re Coastal Plains, Inc.,* 179 F.3d 197, 205 (5th Cir. 1999) (citations and quotations omitted)). The United States Supreme Court has explained the doctrine of judicial estoppel more fully, as follows:

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S. Ct. 555, 39 L. Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").

*New Hampshire,* 532 U.S. at 749.

The Supreme Court has further instructed that the three factors that "typically inform the decision whether to apply the doctrine in a particular case" are the following:

(1) "a party's later position must be 'clearly inconsistent' with its earlier position;" (2) "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled"; and (3) "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* at 750-51 (citations omitted); *see Stallings*, 447 F.3d at 1047 (recognizing and applying the three recommended factors outlined in *New Hampshire*); *see also Bradford v. Wiggins*, 516 F.3d 1189, 1194 (10th Cir. 2008) (applying the three *New Hampshire* factors); *Eastman v. Union Pac. R.R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) (same); *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th Cir. 2005) (same); *cf. Grap*, 368 F.3d at 830-31 (noting that "[on]e of the considerations that typically informs the decision of whether to apply the doctrine in a particular case 'is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'") (quoting *New Hampshire,* 532 U.S. at 751). The Supreme Court has noted that by "enumerating these factors, this Court does not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel." *New Hampshire,* 532 U.S. at 751. In addition, the Supreme Court has recognized that "it *may* be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." (emphasis added) (internal quotations omitted); *see Stallings*, 447 F.3d at 1049 (observing that "judicial estoppel does not apply when a debtor's 'prior position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court.'" (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 362 (3d Cir. 1996) (internal quotations and citation omitted)). Numerous federal courts of appeals, including the Eighth Circuit Court

of Appeals, have held that the omission of a cause of action as an asset in bankruptcy provides an appropriate basis for imposing judicial estoppel. *See United States ex rel. Gebert v. Transportation Admin. Servs.*, 260 F.3d 909, 917-18 (8th Cir. 2001); *see also Eastman*, 493 F.3d at 1156; *Cannon-Stokes v. Potter,* 453 F.3d 446 (7th Cir.), *cert. denied*, 127 S. Ct. 838 (2006); *Jethroe v. Omnova Solutions, Inc.,* 412 F.3d 598 (5th Cir. 2005); *Barger v. City of Cartersville,* 348 F.3d 1289 (11th Cir. 2003); *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778 (9th Cir. 2001); *Payless Wholesale Distribs., Inc. v. Alberto Culver, Inc.,* 989 F.2d 570 (1st Cir. 1993); *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir. 1988). Because the parties contest whether plaintiff Tokheim's actions satisfy the three factors outlined in *New Hampshire*, the court will discuss application of each of these factors *seriatim*.

    2.    *Application of the doctrine of judicial estoppel*

        a.  *The first New Hampshire factor*

The first *New Hampshire* factor the court is called upon to address is whether plaintiff Tokheim's position in this court is "clearly inconsistent" with her earlier position in bankruptcy court. Defendant Georgia-Pacific asserts that plaintiff Tokheim's respective positions in the bankruptcy court and in this court are clearly inconsistent. Plaintiff Tokheim counters that her current position is not inconsistent with the position she took in bankruptcy court because her claims of alleged discrimination did not arise until after she had filed for bankruptcy and not until after her confirmation date in bankruptcy. Plaintiff Tokheim's position is not well founded. When a debtor files for bankruptcy, the debtor is required to file with the bankruptcy court a schedule of assets and liabilities. 11 U.S.C. § 521(a)(1). Estate property in a Chapter 13 bankruptcy "includes property acquired during the pendency of the Chapter 13 case." *Education Assistance Corp. v.*

*Zellner*, 827 F.2d 1222, 1224 (8th Cir. 1987); see 11 U.S.C. § 1306(a)(1).[1] "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, a debtor must amend his financial statements if circumstances change." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1286 (11th Cir. 2002). "Full and honest disclosure in a bankruptcy case is 'crucial to the effective functioning of the federal bankruptcy system.'" *Id.* (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co. et al.*, 81 F.3d 355, 362 (3d Cir. 1996)). As the Eighth Circuit Court of Appeals has observed, "[t]he property of a bankruptcy estate is 'broadly defined,' and encompasses conditional, future, speculative, and equitable interests of the debtor." *United States ex rel. Gebert*, 260 F.3d at 913 (quoting *In re Just Brakes Corp. Sys., Inc.*, 108 F.3d 881, 884 n.2 (8th Cir.), *cert. denied,* 522 U.S. 947 (1997)). A debtor's assets include potential legal causes of action. *See United States ex rel. Gebert*, 260 F.3d at 913; *In re Ozark Rest. Equip. Co.)*, 816 F.2d 1222, 1225 (8th Cir.), *cert. denied,* 484 U.S. 848 (1987); *see also In re Icarus Holding, L.L.C.*, 391 F.3d 1315, 1319 (11th Cir. 2004);

---

[1] Section 1306(a)(1) provides, in a Chapter 13 case, that:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title--
>
> > (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first. . .

11 U.S.C. § 1306(a)(1).

*Krystal Cadillac-Oldsmobile GMC Truck Inc. v. General Motors Corp.,* 337 F.3d 314, 322-23 (3d Cir. 2003); *Seward v. Devine,* 888 F.2d 957, 963 (2d Cir. 1989).

Here, as in the Eighth Circuit Court of Appeals's decision in *Stallings*, plaintiff Tokheim's failure to amend her bankruptcy schedules to include her claims against Georgia-Pacific represented to the bankruptcy court that no such claims existed. Accordingly, her subsequent filing of her claims of sexual harassment, sex discrimination and retaliation in this court are "clearly inconsistent" with her position in bankruptcy court that no such claims existed. *See Stallings*, 447 F.3d at 1049; *United States ex rel. Gebert*, 260 F.3d at 918.[2] Therefore, the first *New Hampshire* factor is satisfied in this case.

---

[2] Plaintiff Tokheim's reliance on the Eighth Circuit Court of Appeals's decision in *McSherry v. Trans World Airlines*, Inc., 81 F.3d 739, 740 (8th Cir. 1996), is unavailing. In *McSherry*, the defendant employer terminated the plaintiff's employment nine months after the employer had filed a Chapter 11 bankruptcy on January 31, 1992. *Id.* The plaintiff subsequently filed an administrative complaint alleging discrimination under the Americans with Disabilities Act ("ADA"). On Aug. 12, 1993, the defendant employer's Chapter 11 bankruptcy plan was confirmed and required all pre-confirmation claims to be filed with the bankruptcy court by Dec. 3, 1993. *Id.* The plaintiff, however, did not file such a proof of claim. Instead, after receiving a right-to-sue letter on April 12, 1994, he filed suit in federal court on July 1, 1994. *Id.* The defendant employer sought dismissal of the lawsuit on the ground that because the plaintiff's claims arose before the defendant employer's plan was confirmed that the plaintiff's claims had been discharged in the defendant employer's bankruptcy. The district court dismissed the case and the Eighth Circuit Court of Appeals affirmed, rejecting the plaintiff's argument that he did not have an ADA claim until he received his right-to-sue letter and holding that the defendant employer's liability for employment discrimination against the plaintiff based on pre-confirmation claims had been discharged in the defendant employer's bankruptcy. *Id.* at 741. Unlike this case, in *McSherry*, the party in bankruptcy was the employer. Moreover, the *McSherry* decision does not address judicial estoppel and does not discuss the issue at hand here, whether an employee in bankruptcy must disclose claims to a bankruptcy court where those claims arose after the employee's confirmation plan is confirmed.

### b. *The second New Hampshire factor*

The second *New Hampshire* factor requires the court to determine whether the bankruptcy court accepted her position that she had no claims against Georgia-Pacific. Defendant Georgia-Pacific argues that the bankruptcy court's discharge was based on Tokheim's representations to that court in her filings and therefore constituted the bankruptcy court's acceptance of her position. The court agrees and concludes that judicial acceptance of Tokheim's position occurred when the bankruptcy court discharged Tokheim's debts based on the information she provided to the bankruptcy court in her schedules. *See In re Superior Crewboats, Inc.,* 374 F.3d 330, 335 (5th Cir. 2004) (holding that bankruptcy court, in issuing "no asset" discharge to debtors, "adopted" debtors' implied representation, in failing to disclose personal injury claim, that no such cause of action existed); *Hamilton v. State Farm Fire & Cas. Co.,* 270 F.3d 778, 784 (9th Cir. 2001) (holding that bankruptcy court accepted debtor's prior assertion, that debtor did not have claims of bad faith and breach of contract against insurer, when bankruptcy court granted his discharge of debt); *Donaldson v. Bernstein,* 104 F.3d 547, 555-56 (3rd Cir. 1997) (holding that judicial acceptance requirement was satisfied when the court approved the debtor's plan of reorganization).

Plaintiff Tokheim argues that the bankruptcy court likely did not rely on her omission of her claims in this lawsuit as assets, given that her confirmed Chapter 13 plan required her to repay 100 percent of her secured debts. The cases plaintiff Tokheim cites in support of her argument, however, do not support it. For example, in *Donato v. Metropolitan Life Ins. Co.,* 230 B.R. 418 (N.D. Cal. 1999), in which the debtor's confirmed Chapter 13 plan required debtors to repay 100 percent of all debts, the court determined that "Donato's failure to disclose her lawsuit against MetLife could not have been relied upon by the bankruptcy court, the bankruptcy trustee or Donato's creditors

because even if she had disclosed it, no creditor would have been able to receive more than 100 percent of its claim." *Id.* at 423. The same is not true in this case where plaintiff Tokheim's confirmed plan required her to only pay 5.45 percent of debts owed to her unsecured creditors. Therefore, the court concludes that the second *New Hampshire* factor is also satisfied in this case.

### c. *The third New Hampshire factor*

The final *New Hampshire* factor requires the court to determine whether plaintiff Tokheim would derive an unfair advantage or impose an unfair detriment on defendant Georgia-Pacific if not estopped. *See New Hampshire,* 532 U.S. at 75-51; *Stallings*, 447 F.3d at 1047-48. The court concludes that the final factor of judicial estoppel is also met here. Plaintiff Tokheim would derive an unfair benefit from her failure to list her claims in bankruptcy. Specifically, if plaintiff Tokheim were to prevail on her claims in this court, after failing to disclose her claims against Georgia-Pacific in bankruptcy, she would be placed in the position to recover monetary damages for herself without having to pay creditors since her debts have already been discharged in bankruptcy court. Therefore, the court finds that the third *New Hampshire* judicial estoppel factor has been met here.

### d. *Inadvertence or good faith mistake exception*

Finally, plaintiff Tokheim contends that she should not be subject to judicial estoppel in this case since her failure to inform the bankruptcy court of her claims against Georgia-Pacific was inadvertent because she informed her bankruptcy attorney of the claims and relied upon her bankruptcy attorney's advice. As the court noted above, in *New Hampshire,* 532 U.S. at 753, the Supreme Court did "not question that it *may* be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." (emphasis added) (internal quotations omitted); *see Stallings*, 447 F.3d at 1049 (observing that "judicial estoppel does not apply when a debtor's 'prior

16

position was taken because of a good-faith mistake rather than as part of a scheme to mislead the court.'" (quoting *Ryan Operations G.P.,* 81 F.3d at 362) (internal quotations and citation omitted)). However, several federal courts of appeals have, for what seems to the court sound reasons, concluded that reliance on legal advice does not constitute a good faith mistake for the purposes of the doctrine of judicial estoppel. *See Eastman*, 493 F.3d at 1159 (holding that plaintiff's assertion that "his attorney 'blew it' is insufficient to with stand application of the [judicial estoppel] doctrine."); *Cannon-Stokes*, 453 F.3d at 449 (holding that "bad legal advice" did not relieve plaintiff of operation of the doctrine of judicial estoppel for failure to disclose claim in bankruptcy); *Jethroe*, 412 F.3d at 601 (rejecting plaintiff's claims that her failure to inform the bankruptcy court of her claims was "inadvertent because she relied on her bankruptcy attorney's advice that those claims were irrelevant."). The reasoning underlying these decisions is exemplified by the Seventh Circuit Court of Appeals's decision in *Cannon-Stokes*, in which the court observed:

> [B]ad legal advice does not relieve the client of the consequences of her own acts. A lawyer is the client's agent, and the client is bound by the consequences of advice that the client chooses to follow. Cannon-Stokes might as well say that she is free to ignore any contract that a lawyer advised her to sign with her fingers crossed behind her back. The lawyer's role as agent is why the Supreme Court held in *United States v. Boyle,* 469 U.S. 241, 105 S. Ct. 687, 83 L. Ed. 2d 622 (1985), that a taxpayer could not avoid paying interest and penalties occasioned by his lawyer's mishandling of the return. . . .The remedy for bad legal advice lies in malpractice litigation against the offending lawyer.

*Cannon-Stokes*, 453 F.3d at 449. This result is also in keeping with purpose of the doctrine of judicial estoppel to protect the courts rather than the litigants. *See New Hampshire,* 532 U.S. at 749-50 (recognizing that judicial estoppel "protect[s] the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions

17

according to the exigencies of the moment.") (citations and internal quotations omitted));
*see also Smith v. Liberty Life Ins. Co.*, 535 F.3d 308, 313 (5th Cir. 2008); *Bradford,* 516
F.3d at 1193; *Jarrard v. CDI Telecomms., Inc.*, 408 F.3d 905, 915 (7th Cir. 2005);
*Alternative Sys. Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23, 32 (1st Cir. 2004); *Ahrens
v. Perot Sys. Corp.,* 205 F.3d 831, 833 (5th Cir. 2000); *Matter of Cassidy*, 892 F.2d 637,
641 (7th Cir. 1990).

Here, there can be no doubt that plaintiff Tokheim was aware of her claims against Georgia-Pacific during her bankruptcy, having filed her administrative claims with the EEOC and ICRC more than three months before it was concluded. Indeed, plaintiff Tokheim does not contend that she was unaware of her claims, only that she was unaware of the duty to disclose them. The bankruptcy court, however, discharged her debts based on her representations regarding her assets. As a result, if she were to have recovered in this case without disclosing it in her bankruptcy proceeding, she would have derived a windfall. Therefore, having found that all three of the *New Hampshire* factors have been satisfied and that plaintiff Tokheim's nondisclosure of her claims was not inadvertent, the court concludes that plaintiff Tokheim is bound by her previous representations and is judicially estopped from pursing her claims in this lawsuit. Accordingly, defendant Georgia-Pacific's Motion for Summary Judgment is granted.

### III. CONCLUSION

For the reasons stated above, defendant Georgia-Pacific's Motion for Summary Judgment is **granted**. The court concludes that because all three of the *New Hampshire* factors have been satisfied and that plaintiff Tokheim's nondisclosure of her claims was not inadvertent, plaintiff Tokheim is bound by her previous representations and is

judicially estopped from pursing her claims in this lawsuit. Judgment shall enter for defendant Georgia-Pacific.

**IT IS SO ORDERED.**

**DATED** this 31st day of March, 2009.

_____
MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA